```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY DICAMILLO             :        CIVIL ACTION
                              :
     v.                       :
                              :
CAROLYN W. COLVIN             :        NO. 12-5438
```

ORDER

AND NOW, this 7th day of August, 2013, upon careful and independent consideration of plaintiff Anthony Dicamillo's brief and statement of issues in support of request for review (docket entry # 11), defendant Michael J. Astrue's[1] response thereto (docket entry # 12), plaintiff's reply to that response (docket entry # 14), the Honorable David R. Strawbridge's thorough and well-reasoned July 25, 2013 report and recommendation ("R&R") (docket entry # 15), and defendant Carolyn W. Colvin's objections thereto (docket entry # 16), and the Court finding that:

(a) Dicamillo applied for benefits on April 30, 2009 alleging that he was disabled due to "bipolar, depression, and drug and alcohol addiction", R. at 169;

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration and, therefore, she should be automatically substituted as the Defendant in this action. See Fed. R. Civ. P. 25(d).

(b) The state agency initially denied his claim, and he then requested a hearing, which he received on October 15, 2010, id. at 34-79;

(c) The Administrative Law Judge ("ALJ") issued a decision on February 8, 2011, finding that Dicamillo was not disabled, id. at 14-28, and the Appeals Council found no basis to set aside that decision, id. at 1-4;

(d) Dicamillo argues that the ALJ erred in four ways: he (1) failed to follow the "governing law related to substance abuse"; (2) failed adequately to explain his determination of Dicamillo's residual functional capacity ("RFC")[2]; (3) improperly rejected medical opinion evidence; and (4) failed to explain his rejection of Dicamillo's mother's written statement and testimony, Pl. Br. at 2-10;

(e) In his R&R, Judge Strawbridge found that the ALJ had sufficiently "follow[ed] governing law relating to substance abuse", R&R at 13; he had "evaluated the opinion statements provided by both treating and state agency physicians and

---

[2] "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec.

provided an explanation for the weight which he gave to them," and "included a thorough discussion of Plaintiff's very extensive medical records", id. at 16; and he did not reject medical evidence but instead properly evaluated it in light of the other evidence to determine how much weight to give it, id. at 19;

 (f) Judge Strawbridge thus rejected Dicamillo's first three arguments;

 (g) But Judge Strawbridge agreed with Dicamillo's fourth argument, that the ALJ rejected his mother's testimony and written statement without explaining adequately his reason for doing so;

 (h) Judge Strawbridge included in his R&R, and we include here, the whole of the ALJ's consideration of Dicamillo's mother's testimony:

> Claimant's mother also testified at the hearing, and noted that claimant watches TV, shops with her when he is able, and does not go out much. She also related to seeing her son in pain daily, and that he rests on and off. The pain aspects are a bit at odds with claimant's relating to his treating doctor that his pain level drops to 1/10 with medication. However, in general this testimony was similar to her son's.

---

Admin., 220 F.3d 112, 121 (3d Cir. 2000) (internal quotations omitted).

R. at 23-24;

  (i) Judge Strawbridge noted that Dicamillo's mother had submitted a "Function Report Adult (Third Party)" in which she wrote that Dicamillo "sometimes gets anxiety or panic attacks around people", R. at 187, does not handle stress well, and "gets very over-whelmed with any situation that might arise", id. at 190;

  (j) Judge Strawbridge found significant the ALJ's failure to discuss this report in light of the ALJ's finding at Step Two that Dicamillo's mood disorder was a severe impairment, id. at 16; R&R at 21, and Judge Strawbridge concluded that "Mrs. Dicamillo's testimony, if credited, bolsters Plaintiff's testimony and may be inconsistent with the ALJ's RFC determination", R&R at 21;

  (k) The ALJ's cursory description of Dicamillo's testimony, including his "failure to make an explicit credibility determination", rendered Judge Strawbridge "unable to determine whether substantial evidence supports the ALJ's decision", and so Judge Strawbridge recommended remanding for further proceedings;

(l)  On this point the Commissioner takes issue with Judge Strawbridge's report,[3] and we must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which" she objects, see 28 U.S.C. § 636;

(m)  Commissioner Colvin raises three objections: first, she argues that our Court of Appeals "has not held that remand is warranted where an ALJ fails to discuss a certain piece of evidence", Obj. at 1; next, she argues that the ALJ's function is "to ensure that there is sufficient explanation of the findings as to permit 'meaningful judicial review,'" and so the ALJ did not commit "legal error" by failing to explain why he did not credit Mrs. Dicamillo's testimony, id. at 2-3; and third, she argues that Judge Strawbridge erred because the task of the reviewing court "is not to determine whether [the ALJ] explicitly mentioned every piece of evidence in his opinion . . . but rather to determine whether the ALJ's findings were supported by

---

[3] Local Civil Rule 72.1 IV(b) provides that "[a]ny party may object to a magistrate judge's proposed findings, recommendations or report under 28 U.S.C. 636(b)(1)(B) . . . within fourteen days after being served with a copy thereof" by filing "written objections which shall specifically identify the portions of the

substantial evidence", id. at 4 (quoting Campbell v. Shalala, No. 93-0181, 1993 WL 452039, at *4 n.3 (E.D. Pa. Nov. 1, 1993));

(n)  These three objections essentially advance the same contention -- the Commissioner contends that Judge Strawbridge erred by recommending remand based on the ALJ's failure to discuss Mrs. Dicamillo's testimony or explain his finding that it was not credible;

(o)  A reviewing court is to determine only whether the ALJ's findings are supported by substantial evidence, 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005); and the Commissioner argues that such a conclusion does not require the ALJ to mention every piece of evidence in the record, so his failure to discuss Mrs. Dicamillo's testimony did not render the findings unsupported by substantial evidence and thus did not justify remand;

(p)  The Commissioner relies on Fargnoli v. Massanari, 247 F.3d 34 (3d Cir. 2001) for the proposition that our Court of Appeals "does not expect the ALJ to make reference to *every* piece

---

proposed findings, recommendations or report to which objection is made and the basis for such objections".

of relevant information", Obj. at 2 (citing Fargnoli, 247 F.3d at 42) (emphasis in Objections attributed to Fargnoli);

(q) In Fargnoli, the Court of Appeals found that though the record included "over 115 pages of relevant, probative treatment notes . . . detailing [the applicant's] medical condition and progress", the ALJ's decision discussed only "four diagnostic tests and five treatment notes", Fargnoli, 247 F.3d at 42;

(r) In remanding, the Court of Appeals noted that it did not "expect the ALJ to make reference to every relevant treatment note", id.;

(s) In Hur, our Court of Appeals cited this principle in finding that substantial evidence supported the ALJ's decision even though the ALJ had failed to address x-rays showing degeneration of the applicant's spine;

(t) The Commissioner's reliance on Hur here is unavailing, for the evidence the ALJ failed to discuss in Hur was not probative, as Mrs. Dicamillo's testimony might be here -- as the Court explained in Hur, it did not find the x-rays probative of any disability: "the evidence does not support that the spinal condition shown in the x-rays was responsible for the disabling

pain that she complained of or caused any functional limitations that affected her ability to work as a cashier", and the Court observed that the petitioner's treating physician "himself seemed to place no importance on the x-rays", id. at 133;

    (u)  To be sure, Hur emphasized that the ALJ's decision need not include "every tidbit of evidence included in the record", id., but implicit in this principle is an evaluation of the probative value of the evidence -- but Hur does not stand for the proposition that an ALJ may forgo consideration of any piece of information in the record and still render a decision supported by substantial evidence;

    (v)  Here, as Judge Strawbridge observed, the information the ALJ failed to consider -- Mrs. Dicamillo's testimony regarding the effects of her son's depression on his daily functioning -- was significant in light of the ALJ's finding that Dicamillo's mood disorder was a severe impairment[4]; see R&R at 21; R. at 16;

---

[4] The ALJ conducts a five-step analysis to determine whether a claimant has a disability within the meaning of the Social Security Act, see 20 C.F.R. § 404.1520; Burnett, 220 F.3d at 118. Here, at step two, the ALJ found that the claimant's mood disorder constituted a severe impairment, but at step three, he found that the mood disorder did not "meet or medically equal[]

(w)    As in <u>Burnett</u> -- where our Court of Appeals vacated the district court's order affirming the ALJ's decision and remanded for further consideration -- the ALJ here made a credibility determination regarding the applicant[5] and then failed to address fully the testimony of a witness -- albeit an interested one but one in a position to observe her son and provide more than "tidbits" -- who appeared in part to bolster

---

one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1", R. at 16.  In the analysis in which he found that Dicamillo's "mental impairments" did not meet or medically equal one of the listed impairments, the ALJ wrote,

> In making this finding, I have considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace . . . A marked limitation means more than moderate but less than extreme.

R. at 17.

[5] The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment", and wrote, "I find the claimant's allegation of total disability to be exaggerated in light of his stated activities of daily living and the evidence as a whole, showing inconsistent statements to medical providers and conservative treatment."  R. at 24.

that credibility, see Burnett, 220 F.3d at 122 ("the ALJ made a credibility determination regarding [the applicant], and these witnesses were there to bolster her credibility"); and

(x) Because the ALJ failed to explain "what portion, if any, of Mrs. Dicamillo's testimony and submitted statement he credited, and fail[ed] to make an explicit credibility determination", we are unable to determine whether the ALJ's decision is supported by substantial evidence;

It is hereby ORDERED that:

1. The Commissioner's objections (docket entry # 16) are OVERRULED;

2. Judge Strawbridge's July 25, 2013 report and recommendation (docket entry # 15) is APPROVED and ADOPTED;

3. This case is REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this Order; and

4. The Clerk of Court shall CLOSE this case statistically.

BY THE COURT:

/s/ Stewart Dalzell, J.